## Keyser Coal Company, et al. v. Helvy, Administrator of Floyd Luster.

(Decided May 8, 1925.)

### Appeal from Pike Circuit Court.

1. Master and Servant—Experienced Miner, Remaining in Mine After Notice Ventilating Fan was Not Operating, Held to have Assumed Risk.—Experienced miner, who remained in mine 2½ or 3 hours after notice that ventilating fan had ceased to operate, assumed risk resulting from bad air.

2. Master and Servant—On Evidence Showing Death from Erysipelas, Verdict should have been Directed for Employer Sued for Death from Bad Air.—In action for death of miner from being poisoned by bad air, where only evidence as to cause of death was that deceased died from erysipelas, which could not have been produced by inhaling bad air, verdict for defendant should have been directed.

PICKLESIMER & STEELE for appellants.

ROSCOE VANOVER for appellee.

OPINION OF THE COURT BY TURNER, COMMISSIONER—
Reversing.

Appellee, as administrator of Floyd Luster, deceased, brought his action against the Keyser Coal Company and two of its employes for damages, alleging in substance that his intestate had come to his death because of their alleged negligence in failing to keep the mine, where decedent worked, properly ventilated, and in failing to keep the electric fan, operated therein, going, whereby decedent was poisoned by bad air and foul and noxious gases accumulating in said mine, which resulted in his death.

The answer was in two paragraphs, the first of which was a traverse, and in the second it is in substance alleged that decedent was an experienced miner and acquainted with the mine and familiar with the condition and location of all entries, rooms and breakthroughs therein, and with the ventilation of the same and the circulation of air therein; and that at the time of the alleged injury decedent knew of the condition of the air in the mine, and if there was at any time any impure or noxious gases therein, or if the fan was failing to work, the decedent had full knowledge of these conditions, and having such knowledge, of his own volition remained in the mine, well knowing the conditions.

In an amended answer contributory negligence and assumed risk are relied upon.

On a trial there was a verdict of $1,500.00 for the plaintiff, upon which judgment was entered, and the court declining to grant a new trial, this appeal results.

The evidence, without contradiction, shows that on the morning in question when the miners went into the mine at about 6:30 a. m., the fan was in operation, and that it ceased to operate about 8:30 for some mechanical reason that is unimportant; it likewise shows that the operator of the fan promptly notified the mine boss of the fact, and that he in turn promptly sent messengers throughout the mine to notify the men. It likewise shows that at or before 9 o'clock decedent and his co-worker had actual notice of the fact that the fan had ceased to operate, and as experienced miners they knew the air might, after a time, become foul in the mine. With this knowledge, however, they declined, for reasons of their own, to promptly leave the mine, but remained therein until 11:30 or 12:00 o'clock on that day, at about

which time they felt some effects from the accumulating bad air.

The evidence further shows that decedent went to his home some distance away without assistance, and there remained that afternoon, and after his supper went some distance away to the home of another from whom he had previously bought some chickens, procured the chickens, carried them home, and after reaching home, by the use of some wire netting, made and prepared a place to confine the chickens he had bought. It likewise appears, without contradiction, that in making the chicken pen he received a slight wound on the face from the wire he was handling.

He remained at his home the following day, and on Wednesday, not feeling well, he sent for a doctor, and notwithstanding the care of his physician, he died on the following Monday, just a week from the time he had last been in the mine.

It is perfectly clear that the directed verdict asked for by appellants should have been given for two reasons.

First, there is no contradiction in the evidence that decedent remained in the mine two and a half or three hours after he had notice that the fan had ceased to operate, and without argument or elaboration, it is so clear that he thereby assumed any risk that might result from bad air, the citation of authority would seem to be super- fluous. He was familiar with the mine, an experienced miner, and knew what the result might be when the fan ceased operating, and so knowing, he assumed the risk of any injury that might result therefrom by remaining in the mine.

Not only so, his physician was introduced as a wit- ness (and there is no other evidence in the record disclos- ing what his death resulted from) and testified that de- cedent died from erysipelas, and that the erysipelas could not have been produced by inhaling foul air. While he does not specifically state that the erysipelas resulted from the scratch by the wire on decedent's face, the fair inference to be drawn from his testimony points to that conclusion.

It is perfectly clear that for either of the reasons in- dicated, the directed verdict should have been given.

The judgment is reversed, with directions to grant appellant a new trial, and for further proceedings con- sistent herewith.